Jewish Memorial Hospital *v.* Commonwealth.

JEWISH MEMORIAL HOSPITAL & others[1] *vs.*
COMMONWEALTH
& others.[2]

Suffolk. May 6, 1993. - August 11, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Medicaid. Hospital*, Medicaid reimbursement.

Regulations of the Department of Public Health (DPH), 106 Code Mass.
Regs. §§ 435.401-435.411 (1991), governing participation in the Mas-
sachusetts Medicaid program by chronic disease, rehabilitation, and
DPH hospitals and by units within other facilities that perform chronic
disease or rehabilitation services, did not violate provisions of G. L. c.
6A, § 32, with respect to determinations of medical necessity for inpa-
tient hospital care [135-137], nor, in matters within the scope of the
declaratory judgment appealed from, did the regulations violate § 32
with respect to reimbursement of facilities for administratively neces-
sary days [137], or to the rights of appeal applicable to a determination
that administratively necessary day rates shall apply to a particular pa-
tient [137-138].

Regulations of the Department of Public Health (DPH), 106 Code Mass
Regs. §§ 435.401-435.411 (1991), governing participation in the Mas-
sachusetts Medicaid program by certain providers of chronic disease
and rehabilitative care, did not violate provisions of G. L. c. 118E, § 4,
that bar DPH from regulating the nature and degree of medical ser-
vices that shall be provided to a patient; rather, the regulations pro-

[1]Youville Rehabilitation and Chronic Disease Hospital, St. John of God
Hospital, Massachusetts Respiratory Hospital, Middlesex County
Hospital, New England Sinai Hospital and Rehabilitation Center,
Shaughnessy-Kaplan Rehabilitation Hospital, Worcester County Hospital,
and the following physicians, each of whom is associated with one of the
plaintiff hospitals: Lawrence J. Kerzner, Henry H. Cho, John A. Bolzan,
Mehbooba Anwar, David J. Takvoryan, Lawrence S. Hotes, and Ronald J.
Pantano.

[2]The Department of Public Welfare, the Commissioner of that
department, the associate commissioner of that department who is
responsible for the administration of the Commonwealth's Medicaid
program, and the Department of Public Health.

vided a statutorily permissible procedure for determining, for reimbursement purposes alone, the medical necessity and appropriateness of hospital placements. [138]

A regulation of the Department of Public Health, 106 Code Mass. Regs. § 435.409 (A) (1991), part of a series governing participation in the Massachusetts Medicaid program by certain providers of chronic disease and rehabilitative care, did not violate Federal utilization review regulations. [138-139]

A Department of Public Health request for proposals (RFP) for the furnishing of chronic disease and rehabilitative care to Medicaid recipients, for which the providers would be reimbursed at negotiated rates, was statutorily authorized [139], and was not rendered unlawful by the circumstance that its implementation would require amendment of the State's Medicaid plan [139-140]; nor, on the record of a declaratory proceeding, was the RFP shown to have violated Federal regulations requiring public notice [140] and guaranteeing patients' freedom of choice [140-141].


CIVIL ACTION commenced in the Superior Court Department on November 26, 1990.

The case was heard by *Patrick J. King*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Edward D. Kalman* (*Rochelle H. Zapol* with him) for the plaintiffs.

*Judith Fabricant*, Assistant Attorney General (*William L. Pardee*, Assistant Attorney General, with her) for the Commonwealth & others.

WILKINS, J. The plaintiff hospitals appeal from a declaratory judgment entered on May 1, 1992, in the Superior Court, following the filing of cross-motions for partial summary judgment. That judgment upheld the lawfulness of certain regulations of the Department of Public Welfare (department) and the lawfulness of the department's 1990 request for proposals for the development of specialized facilities. We transferred the case from the Appeals Court on our own motion.

The judgment upheld 106 Code Mass. Regs. §§ 435.401 to 435.411 (1991), inclusive, against a claim that they violated the requirements of G. L. c. 6A, § 32 (1992 ed.), the requirements of G. L. c. 118E, § 4 (1992 ed.), and Federal standards for Medicaid reimbursement. Those regulations are a portion of the department's regulations governing participation in the Massachusetts Medicaid program by chronic disease, rehabilitation, and Department of Public Health hospitals and units within other facilities that perform chronic disease or rehabilitation services.[3] The plaintiffs rightly complain that the judgment fails to address their contentions that other, later numbered, sections of the department's regulations on the same general subject are unlawful. The complaint cited such regulations and alleged violations of law that necessarily concerned those regulations. We shall remand the case for consideration of the plaintiffs' challenges not disposed of by the declaratory judgment.

The judge rejected the plaintiffs' challenges to the department's plan to seek the development of specialized facilities to provide care for persons who have conditions that do not require hospitalization but do require services not generally available in a nursing home. In the summer of 1990, the department issued a request for proposals (RFP) for the development of such specialized facilities. In November, 1990, the department awarded contracts to twenty bidders, three of whom are plaintiff hospitals in this case. The plaintiffs challenge the department's procedure for the creation and operation of such facilities, arguing, among other things, that the RFP violates Federal requirements for Medicaid programs and that the RFP, and the regulations together, violate rights protected by the Fourteenth Amendment to the United States Constitution.

---

[3]The declaratory judgment only referred to 106 Code Mass. Regs. §§ 435.401 - 435.410 (1991). However, because of renumbering of the regulations made after argument of the case in the Superior Court but before the judgment was entered, it is clear that the judgment should have included 106 Code Mass. Regs. § 435.411 (1991) with the other regulations.

The declaratory judgment did not dispose of the entire case, and, strictly speaking, absent a direction from the judge, the judgment was not an appealable final judgment. See Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). We shall, however, deal with the plaintiffs' objections to the judgment that was entered.[4]

1. *The regulations.* We consider first the plaintiffs' challenges to the lawfulness of certain aspects of 106 Code Mass. Regs. § 435.401 - 435.410. We address in order the plaintiffs' arguments that certain regulations violate (a) G. L. c. 6A, § 32, (b) G. L. c. 118E, § 4, and (c) Federal Medicaid reimbursement standards.

(a) The plaintiffs advance four arguments challenging regulations as violative of G. L. c. 6A, § 32. First, the plaintiffs claim that the department improperly reserved to itself in § 435.409 (A) the right to review the medical necessity of the placement of a patient in a chronic disease hospital. Section 435.409 (A) provides that "[t]he following level-of-care criteria will be used by the Department or its agent to determine the medical necessity and appropriateness of placement in chronic disease . . . hospitals." It is claimed that this preadmission screening provision is contrary to a provision in § 32, added by St. 1988, c. 270, § 1, concerning rates of reimbursement for administratively necessary days. The provision in § 32 states that "[d]eterminations as to the medical necessity of patient care shall only be made by physician members of each hospital's utilization review committee, and may only be subject to review by [authorized peer review organizations]." An administratively necessary day is a day in which a Medicaid recipient who is a hospital inpatient could

---

[4]It was within the judge's discretion to deny the plaintiffs' motion to add the Rate Setting Commission as a party and claims seeking a declaratory judgment on issues not raised in the complaint in this case.

There is also before us an appeal from the motion judge's denial in March, 1993, of the plaintiffs' motion under Mass. R. Civ. P. 60 (b) (6), 365 Mass. 828 (1974), to vacate judgment based on events that occurred after the entry of the declaratory judgment. The judge did not abuse his discretion in denying that motion.

properly be treated in a facility providing a lower level of care but no such facility is reasonably available. See *New England Memorial Hosp. v. Rate Setting Comm'n*, 394 Mass. 296, 298 (1985). The plaintiffs make no reasoned argument in support of their claim that a regulation concerning only preadmission screening (§ 435.409) is unlawful because of statutory language concerning determinations as to the medical necessity of inpatient care. We reject this challenge to § 435.409 (A).[5]

Second, plaintiffs challenge 106 Code Mass. Regs. §§ 435.409 and 435.410, both of which concern the level of care that a patient must require to be considered an appropriate chronic disease hospital placement. The claim is that other language added to G. L. c. 6A, § 32, by St. 1988, c. 270, § 1, forbids the department from becoming involved in medical determinations in the way that it is claimed that §§ 435.409 and 435.410 allow. That language states that "[d]eterminations of the medical necessity of care provided to patients by non-acute hospitals shall not be subject to any substantive standards other than generally accepted medical practice." We see no conflict. The challenged regulations concern the question whether a placement in a chronic disease hospital is appropriate for reimbursement purposes. The statutory language concerns the determination of the medical necessity for care in such a hospital. The regulation and statute relate to different subjects. It is no doubt true that the availability of reimbursement and the level of any available reimbursement might indirectly affect medical judgments as to what care to provide to a patient. We do not, however, read the statutory language as barring the department from having control over the appropriateness for reimbursement purposes of hospital admissions for which public funds are expended. See 42 U.S.C. § 1396a (a) (30) (A) (Supp. III 1991) (department has an obligation, among other things, to "provide such methods and procedures relating to the utiliza-

---

[5]Any challenge to 106 Code Mass. Regs. § 435.412 (1991) is outside the scope of the declaratory judgment.

tion of, and the payment for, care and services . . . as may be necessary to safeguard against unnecessary utilization of such care and services").

A somewhat similar argument was rejected in *Norfolk County Hosp.* v. *Commonwealth*, 25 Mass. App. Ct. 586, 592 (1988), in which the court held that prior, similar regulations, defining an appropriate placement in a chronic disease hospital, did not violate the prohibition in G. L. c. 118E, § 4, against the department formulating "medical standards and criteria." Chapter 270 of the Acts of 1988 was enacted approximately six months after the Appeals Court opinion in the *Norfolk County Hosp.* case. If the Legislature had intended to bar the department from promulgating criteria concerning the appropriateness for reimbursement purposes of a placement in a chronic disease hospital, it should have been, and, we think, would have been, more specific.

Third, the plaintiffs argue that the department's regulations do not comply with the mandate of G. L. c. 6A, § 32, that the administratively necessary day rate "shall only apply to patients for whom medically necessary care is usually provided to public assistance recipients admitted to nonhospital facilities within a twenty-five mile radius of the domicile of any individual recipient or his family." The regulations which specify when administratively necessary days are reimbursable are 106 Code Mass. Regs. §§ 435.413 and 435.414 (1991), and are beyond the scope of the declaratory judgment. The department was not obliged to deal with this subject in its definition of administratively necessary days in § 435.402 (A).

Fourth and finally, the plaintiffs argue that the department has failed to conform its regulations to the rights of appeal established in G. L. c. 6A, § 32, as amended by St. 1988, c. 270, § 1, concerning a determination that administratively necessary day rates shall apply to a patient. The plaintiffs point to § 435.409 (B) as failing to meet the statutory standard. That section, however, provides an appeal mechanism concerning preadmission screening decisions and does not involve determinations as to administratively necessary day

rates. That regulation is the only one within the scope of the declaratory judgment that the plaintiffs challenge on the ground that it fails to provide proper appellate procedures.[6]

(b) The plaintiffs also argue that aspects of the regulations violate G. L. c. 118E, § 4, because they contain "medical standards and criteria" which § 4 states the department may not formulate.[7] This is an up-to-date reiteration of the claims made unsuccessfully by the plaintiffs in *Norfolk County Hosp.* v. *Commonwealth, supra* at 591-592, and noted earlier in this opinion. The prohibition in § 4 against the department's formulating medical standards and criteria bars the department from regulating the nature and degree of medical services that shall be provided to a patient. It does not, however, bar the department from determining for reimbursement purposes the medical necessity and appropriateness of a placement in a chronic disease hospital using criteria such as the adult appropriateness evaluation protocol referred to in § 435.409.

(c) The plaintiffs are wrong in asserting that 106 Code Mass. Regs. § 435.409 (A) violates Federal utilization review requirements. They have misunderstood the operation of the challenged regulation. An independent physician, not the department, has the final say on the preadmission placement decision. 106 Code Mass. Regs. § 435.401 (B). Although a hospital must have a utilization review plan that meets Fed-

---

[6] The plaintiffs' challenge to 106 Code Mass. Regs. § 435.417 (1991) is outside the range of the judgment, but it would fail for the same general reason, that is, the subject matter of the decision involved in § 435.417 is not one as to which G. L. c. 6A, § 32 (1992 ed.), mandates a particular appellate process.

What we say in *Youville Hosp.* v. *Commonwealth, post* 142 (1993), concerning the hospitals' rights to declaratory relief concerning administratively necessary day rates and St. 1988, c. 270, § 1, would also justify not granting the plaintiffs relief on this fourth point.

[7] Section 4 of G. L. c. 118E (1992 ed.) provides that "[i]n administering the program the department shall formulate such methods, policies, procedures, standards and criteria, except medical standards and criteria, as may be necessary for the proper and efficient operation of the plan in a manner consistent with simplicity of administration and the best interests of the recipients."

eral requirements (42 U.S.C. § 1395x [k] [1988]) in order to qualify for Medicaid reimbursement (42 U.S.C. § 1396b [i] [4] [1988]), § 435.409 (A) in no way impedes the plaintiffs from doing so. Moreover, there is no Federal prohibition against the establishment of State procedures that supplement Federal utilization review requirements. Preadmission screening, which is the subject of § 435.409 (A), is a process separate from that addressed by the Federal requirements and does not concern utilization review by its terms.[8]

2. *Requests for proposals.* The plaintiffs advance various objections to the department's request for proposals (RFP) for the furnishing of care to Medicaid recipients who do not need to be hospitalized in an acute care hospital, but need services not generally available in a nursing home. No contract had been negotiated at the time that summary judgment was ordered. The plaintiffs have not shown that the department's RFP is unlawful.

The department had statutory authority to make agreements of the type contemplated with chronic disease and rehabilitative hospitals such as the plaintiffs. See G. L. c. 118E, § 4, and G. L. c. 118E, § 2 (*g*) (1992 ed.), defining "provider." The prohibition of St. 1992, c. 133, § 2, line-item 4402-4200, against the department's selectively contracting for chronic hospital services before July 1, 1993, is not shown to be violated, was enacted after the judgment was entered in this case, and implicitly recognizes the department's authority generally to enter into such contracts.

The RFP provides that hospital reimbursement will be at negotiated rates. The Commonwealth's Medicaid plan, then in effect, did not permit reimbursement at negotiated rates. Federal law requires that rates of reimbursement be in accordance with a Federally approved State plan. 42 C.F.R. § 447.253 (i) (1992). See *Quincy City Hosp.* v. *Rate Setting Comm'n*, 406 Mass. 431, 433 (1990) (State choosing to participate in Medicaid "must submit to [Federal agency] a

---

[8]Challenges to § 435.412 in connection with utilization review are not before us.

'State plan' for medical assistance that comports with Federal statutory and regulatory requirements"). The defendants grant that the State plan would have to be amended in order to implement the RFP program. The judgment entered on remand should acknowledge this circumstance (adjusted, if necessary, to current circumstances). The obligation to amend the State plan need not be satisfied before any contracts at negotiated rates are executed. See 42 C.F.R. §§ 430.20 (b) and 447.256 (c) (1992).

The plaintiffs' argument is premature that public notice is required before the department may contract at negotiated rates pursuant to the RFP. See 42 C.F.R. § 447.205 (1992). Moreover, it is doubtful that the plaintiffs, who already know of the circumstances, have any basis for complaint. See *California Ass'n of Bioanalysts* v. *Rank*, 577 F. Supp. 1342, 1349-1350 (C.D. Cal. 1983). The underlying issue as to whether public notice is required is whether reimbursement at a negotiated rate is a "significant proposed change" in the department's "methods and standards for setting payment rates for services." 42 C.F.R. 447.205 (a). The addition of a new method of payment seems to be a change in the method of setting payment rates for services. Whether the change is significant may depend on facts not before us, such as the impact on Medicaid expenditures. The fact that the RFP would affect only about 260 Medicaid recipients suggests that the change may not be significant in its general impact. See *Missouri Dep't of Social Servs.* v. *Sullivan*, 957 F.2d 542, 545 (8th Cir. 1992).[9]

The plaintiffs probably have no standing to challenge the RFP program on the ground that it violates Federal law gov-

---

[9]The plaintiffs' complaint that there are no findings that the negotiated rates are reasonable and adequate and in accordance with law (42 U.S.C. § 1396a [a] [13] [A] [Supp. III 1991]) is also premature. Because there were no negotiated rates, there could be no such findings.

The plaintiffs' argument that the RFP will violate Federal utilization review requirements is wrong. Nothing in the RFP exempts contract facilities from utilization review requirements that are otherwise applicable.

erning Medicaid patients' freedom of choice.[10] In any event, the RFP opens up a new option for such patients and in no way restricts their choices of facilities. The record does not support the claim that the RFP violates the requirement of 42 U.S.C. § 1396a (a) (10) (1988 & Supp. III 1991), and implementing regulations (42 C.F.R. §§ 440.230 and 440.240 [1992]), concerning equality in the amount, duration, and scope of each service provided the categorically needy group and the covered medically needy group.

3. Although we affirm the provisions of the judgment entered, the case is remanded for consideration of such issues in the complaint that were not decided by the declaratory judgment. Circumstances may have changed so that certain issues are no longer important or are perhaps even moot. In the judge's discretion, the complaint may be amended to present current issues, but the judge may conclude that a new action based on a new record would better present any such issues. The declaratory judgment shall be supplemented and amended to be consistent with this opinion and to resolve any undecided issues as to which there is an actual controversy.[11]

*So ordered.*

---

[10]The plaintiffs state briefly that the RFP program in certain of its aspects denies them and their patients equal protection of the laws and violates due process guarantees. The plaintiffs make no showing that classifications made by the program are constitutionally inappropriate or that they have standing to raise their patients' constitutionally-based arguments. The plaintiffs' claim that there was a dispute of material fact on the constitutional issues that barred the granting of summary judgment lacks merit.

[11]Plaintiffs' counsel could have greatly enhanced their presentation, the court's ability to deal with that presentation, and the defendants' manner of response by presenting each contention separately with supporting authority rather than grouping several points under one general topic. The issues in a case of this character are complicated by the interaction of Federal and State statutes and regulations. The facts bearing on these issues are often crucial to an understanding of them and to their resolution and should be discussed in the analysis of the issues. It is also instructive if an advocate explains why the alleged illegality of an agency regulation or an agency's course of conduct matters to the advocate's client.